In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-2026

JAMES T. ALLEN,

*Plaintiff-Appellant,*

*v.*

TIMOTHY W. MARTIN, BRIAN PIERSMA
AND ROBERT MILLETTE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 3089—**Jeanne E. Scott**, *Judge.*

ARGUED FEBRUARY 21, 2006—DECIDED AUGUST 22, 2006

Before BAUER, KANNE, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* James T. Allen was fired from his position as the Bureau Chief of Accounting and Auditing for the Illinois Department of Transportation (IDOT) in April 2003; less than three months after Rod Blagojevich, a Democrat, replaced George Ryan, a Republican, as Governor of the State of Illinois. Allen brought suit against the defendants, employees of the IDOT, under 42 U.S.C. § 1983, alleging violations of his First Amendment right to political affiliation and his Fourteenth Amendment right to due process. The defendants filed a motion for judgment on the pleadings, FED. R. CIV. P. 12(c). Treating the motion as one for summary judgment, FED. R. CIV. P. 56(c), the district

court first granted the parties time to file additional materials, and then granted judgment for the defendants after finding that political affiliation was an appropriate hiring criterion for the position. We affirm.

## I.  Background

The IDOT is responsible for the state's vast transportation system. In tending to this responsibility, the Department expends both state and federal funds on roads, airports, railways, and mass transportation. The proposed budget for fiscal year 2006 was $7.8 billion.[1] To manage these funds, the IDOT has an Office of Finance and Administration that is responsible for "developing and administering the Department's . . . budget, . . . [and] providing accounting and auditing functions to ensure sound fiscal management. . . ." 2 Ill. Adm. Code 1225.230.

The Office is divided into seven Bureaus, one of which is Accounting and Auditing. 1225.230(a). Accounting and Auditing is responsible for providing general accounting and audit services, including "general cost accounting; recommendations on internal financial policies, procedures and control; management of Federal billing; and internal/external auditing." *Id*. It was this Bureau over which Allen served as Chief.

According to the official IDOT position description, the Bureau Chief of Accounting and Auditing, titled Technical Manager VIII, is accountable for "planning, organizing and directing accounting activities department-wide, establish-

---

[1] Figure presented in IDOT press release, February 16, 2005. "Gov. Blagojevich IDOT budget proposal maximizes efficiency and improves accountability," http://www.dot.state.il.us/press/r021605.html.

ing fiscal control procedures, administering all business services and keeping management informed of potential problems in expenditures or fiscal agreements." Defendants' Br. at A2. The Bureau Chief reports to the Director of Finance and Administration and supervises five employees directly and ninety-five employees indirectly. The five employees reporting directly to the position are the "Section Chiefs of Accounts and Finance, Project Control, Audits, Business Services and a Secretary." *Id.*

The job description explains that "[i]n light of the magnitude and complexities of transportation programs, this position is accountable for developing and maintaining all records, procedures, and systems to support the Department's fiscal accounting activities." *Id.* The major challenges for the job include the need to "reconcile financial record problems between the Department and the State Comptroller; . . . review proposed third party agreements and recommend changes as necessary in agreement content; and . . . [respond] to inquiries from legislators on funds expended in their legislative districts through coordination with the Bureau of Legislation." *Id.*

To accomplish these goals, the Bureau Chief manages four primary subordinates. The Chief of Accounts and Finance, with 40 full-time employees, is responsible for maintaining the ledgers, accounts receivable and payable, and preparing financial statements. *Id.* at 3. The Chief of Audits, with 23 full-time employees, is responsible for formulating overall audit policies and procedures, evaluating IDOT internal controls and procedures, determining the reliability of accounting and other IDOT data, conducting special examinations, and coordinating "reciprocal or courtesy audit arrangements with other states and Federal Highway Administration officials." *Id.* The Chief of Project Control, with 12 full-time employees, tracks the status of all federally aided programs. *Id.* The Chief of Business Services, with 16 full-time employees, oversees

central purchasing, equipment inventory, real estate leases, capital improvements, and budget and accounting for the Bureau. *Id.*

The job description further details that the Bureau Chief is responsible for developing and controlling the Bureau's operating budget and recommending the budget to the Director for final approval. These decisions are constrained by "[s]tate and [f]ederal regulations, Departmental rules and regulations, and the general goals and objectives established by the Secretary." *Id.* But not all of the Bureau Chief's responsibilities are internal. The Chief interacts with other Bureaus and agencies within the IDOT and has contacts outside of the Department. *Id.* at A4. Included in the latter group are the "Auditor General and Legislative Audit Commission on Departmental audits [and] other State Highway or Transportation Departments on transportation related matters, particularly the fiscal or financial aspects." *Id.*

Lastly, the job description reemphasizes the position's ten principal accountabilities. The three most relevant points for our review today being the need to: "[d]evelop and maintain a financial management reporting system;" "[d]evelop and maintain fiscal accounting and reporting procedures;" and "[p]erform procedural audits and surveys on both an internal and external basis." *Id.*

Allen was hired into this position on December 13, 2002. On January 13, 2003, Rod Blagojevich, a Democrat, replaced the outgoing Republican governor, George Ryan. Allen was then fired on April 2, 2003.

On April 13, 2004, Allen filed his initial complaint alleging the violation of his First and Fourteenth Amendment rights by Martin and the IDOT. His amended complaint, naming the current defendants, was filed on August 20. On September 3, the defendants filed their Motion for Judgment on the Pleadings, FED. R. CIV. P. 12(c). This

filing, however, relied on evidence not contained in the pleadings, and on October 26, the district court converted it into one for summary judgment.

The court initially gave the parties until November 16, 2004, to file any additional materials made necessary by the conversion of the motion to summary judgment. On November 10, Allen filed a Motion for Extension of Time to File, praying for a new deadline of November 30. The district court granted this motion. On November 30, however, Allen filed another motion for additional time. Attached to this filing was his affidavit describing his responsibilities as Bureau Chief of Accounting and Auditing.

Allen's affidavit describing his duties as actually performed primarily tracks his job description. He claims not to have directly reported to the Director of the Office of Finance and Administration; but instead to the two Deputy Directors. Otherwise, he acknowledged responsibility over the areas of accounts and finance, audits, business services, and project control. In accounts and finance, he stated that he "basically paid bills and then input information." Plaintiff's Br. at App. 64. For audits, Allen noted that he was responsible for the internal and external audit of employees and contractors, but maintained that he did not set guidelines or accepted procedures. Business services primarily dealt with purchases, and his actions were governed by state and federal regulations. Regarding project control, Allen noted that his primary job was to monitor both work flow and payments for Federal highway projects. *Id*. at 64. Allen concluded by noting that there were three former IDOT employees, whose affidavits he did not have, who would support the matters set forth in his affidavit.

The district court denied Allen's second motion for additional time. On March 15, 2005, Judge Scott entered

summary judgment in favor of the defendants on all issues. Allen now appeals pursuant to 28 U.S.C. § 1291. He claims that the district court erred in granting summary judgment (1) without allowing him greater time to collect evidence, (2) on the basis of his job description and submitted affidavits, and (3) on his due process claim. We address these claims in sequence.

## II.  Analysis

### A.  Additional Time for Discovery

Allen's first point is that the district court erred in granting defendants' motion for summary judgment without allowing him additional time for discovery. The district court's decision on this matter was governed by FED. R. CIV. P. 56(f), which states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

We review the district court's decision in applying Rule 56(f) for abuse of discretion. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000); *see also Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 884-85 (7th Cir. 2005).

Allen argues now, on appeal, that had he been given additional time to collect the affidavits of three of his former coworkers, they would have yielded facts essential to his claim. Additionally, he makes much of the fact that he consistently tried to obtain the affidavits, and was unable to contact them through no fault of his own. Diligence in obtaining the evidence, however, is not the issue under Rule 56(f); we are concerned with whether the facts

sought are "essential to justify the party's opposition." FED.
R. CIV. P. 56(f). In his filings, Allen implicitly told the
district court that there was nothing essential about the
information he sought. In the memorandum filed in support
of his Motion to Continue, he wrote that he "[believed] his
own Affidavit (Exhibit A) sufficiently sets forth facts to
defeat the Motion for Summary Judgment . . . [but that the
other affidavits] could shed light on the subject as well. . .
." Motion for Continuance of Ruling, ¶ 4, Nov. 30, 2004.
Because of this admission that the affidavits would provide
only supplementary evidence, the district court found that
Allen's motion did not meet the Rule 56(f) showing for a
continuance. This decision was well within Judge Scott's
reasonable exercise of discretion.

## B. Political Affiliation As a Criterion for Employment

Allen argues next that the district court erred in granting
the defendants' motion for summary judgment as to
whether political affiliation was an appropriate criterion for
his employment. We review this ruling *de novo. Semien v.
Life Ins. Co. of North America*, 436 F.3d 805, 809 (7th Cir.
2006). Summary judgment is appropriate if the moving
party demonstrates "there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law." FED. R. CIV. P. 56(c). When
determining whether a genuine issue of material fact exists,
this Court considers evidence in the light most favorable to
the nonmoving party. *See Matsushita Elec. Ind. Co. v.
Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On appeal,
there is no disagreement between the parties as to whether
Allen was fired for political purposes. The only issue is
whether his political affiliation was an appropriate criterion
for his former position as the IDOT Bureau Chief of Ac-
counting and Auditing.

A public employee may be dismissed on the basis of their political affiliation where the "nature of his job makes political loyalty a valid qualification" for the effective performance of their position. *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005); *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005). We have previously held that such political loyalty may be demanded where the employee's position involves "the making of policy and thus the exercise of political judgment." *Riley*, 425 F.3d at 359 (citing *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976); *Branti v. Finkel*, 445 U.S. 507, 518 (1980)). If a position "'authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation," it will be found to involve policymaking. *Kiddy-Brown*, 408 F.3d at 355 (quoting *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981). Additionally informative is the degree of discretion and responsibility exercised in the position. *See Riley*, 425 F.3d at 363; *Selch v. Letts*, 5 F.3d 1040, 1043 (7th Cir. 1993). Before we may address the constitutionality of the defendants' demand for political loyalty for Allen's position, however, we must first determine what evidence to consider.

In evaluating whether the Bureau Chief job was one for which political affiliation was an appropriate criterion, we focus on the inherent powers of the office as presented in the official job description. *Riley*, 425 F.3d at 360-61 (citing *Meeks v. Grimes*, 779 F.2d 417, 419 n.1 (7th Cir. 1985)).[2] We only look past the job description where the

---

[2] Because defendants introduced the official job description into evidence at trial, and the district court considered it as such in granting summary judgment, this case follows *Riley*, 425 F.3d 357(affirming summary judgment, in part, upon consideration of job description), and not *Kiddy-Brown,* 408 F.3d 346 (remand-
(continued...)

plaintiff demonstrates some systematic unreliability. *Id.*; *Pierson v. Blagojevich*, 437 F.3d 587, 588 (7th Cir. 2006). This approach is necessary to prevent excessive litigation in the turnover between opposing political administrations and to deter incumbent public employees from protecting their jobs by simply neglecting particular responsibilities. *Riley*, 425 F.3d at 361.

Allen argues that we must look beyond his official job description to consider the tasks he actually performed. To reach this point on summary judgment, however, he must provide specific facts demonstrating that the description was unreliable and unauthoritative. *See id.* He must show, for example, that the description has been manipulated in some manner by officials looking to expand their political power. *Id.* Practically, we look to see how the description was created and when, and how often, it was updated. *Id.* The job description before us, for Bureau Chief, Accounting and Auditing, is dated June 1, 1985. The document bears no outward indications of having been recently manipulated to be suddenly drawn within the realm of policymaking. Moreover, at no point in this litigation has Allen suggested that the description is unreliable. Contrarily, Allen relied on the official description himself to argue that, when viewed in the light most favorable to his case, the Bureau Chief position was not one requiring political loyalty. Plaintiff's Br. at 15-16. Given this implicit acceptance, we look solely to the job description to determine if political affiliation is an appropriate job requirement, thus warranting summary judgment for the defendants. *See Pierson*, 437 F.3d at 588.

In reviewing Allen's job description, we see that his former position has broad discretion and authority over

---

[2] (...continued)

ing for further factual development where the district court considered only the plaintiff's affidavit).

IDOT accounting and auditing. The Bureau Chief is responsible for establishing fiscal control procedures, directing internal and external audits, and informing management of possible problems in expenditures or fiscal agreements. In directing these concerns and possible solutions to his superior, the Director of Finance and Administration, the Bureau Chief has considerable input into government decisionmaking and the implementation of goals stemming from that process.

Additionally, the effective and reliable execution of the Bureau's audit function is of great political value. The Bureau Chief oversees the formulation of audit policies, procedures, and special examinations. These audits are conducted on both the internal functions of the IDOT and the Department's contracts with third-parties. The audits ensure the Department's efficient operation and the reliability of its financial data. The effective implementation of this policy has great impact on the administration's public reputation. *See Selch*, 5 f.3d at 1046 (holding subdistrict superintendents of Indiana Department of Highways exempt from First Amendment employment protections because of the significant representative role their work played in relation to the political administration). The Bureau Chief is then responsible for coordinating IDOT audits with the Federal Highway Administration, as well as communicating with the Illinois Auditor General and Legislative Audit Commission on Departmental audits. External audits such as these have the potential to cause great embarrassment for the administration if it is revealed that the Department is not operating in a fiscally efficient manner. See *Auditor: IDOT Reorganization Costs Taxpayers*, CHICAGO BUSINESS, Mar. 8, 2006 at http://www.chicagobusiness.com/cgi-bin/ news.pl?id=19785.

Further, the Bureau Chief serves an important role in representing the IDOT in a larger political context. One of the "[m]ajor challenges" of the Bureau Chief's job is to

respond to legislator questions on fund expenditures in their districts. In *Selch*, we held that similar communications with public officials regarding highway expenditures required political sensitivity, thus demonstrating a need for political loyalty. 5 F.3d at 1046-47.

Allen claims, however, that when viewed in a light most favorable to his claim, the job description demonstrates that political affiliation is an inappropriate hiring criterion. He directs our attention to the fact that the Bureau Chief is constrained by "[s]tate and [f]ederal regulations, Departmental rules and regulations, and the general goals and objectives established by the Secretary." Defendants' Br. at A3. Because his actions had to comport with the Secretary's goals, he argues, he was not in a position to formulate policy that would result in the kind of principled disagreement addressed in *Kiddy-Brown*. But, if the inability to set goals contrary to those of one's superior was the test for determining the appropriateness of considering political affiliation in government hiring, no employee under the governor would be found exempt from First Amendment protection. Instead, we look to the ability to offer *input* into government decisionmaking. In creating and implementing Department accounting and audit policies, reviewing third-party agreements and proposing changes to the content of these agreements, Allen did indeed have the requisite input to exempt him from the First Amendment's protection. *Selch*, 5 F.3d at 1046; *Wilbur v. Mahan*, 3 F.3d 214, 217 (7th Cir. 1993). We find that when viewed in the light most favorable to Allen, the job description presents no genuine issue of material fact as to the whether political affiliation was an appropriate hiring criterion for the position of Bureau Chief of Accounting and Auditing.

## C. Due Process

Lastly, Allen claims that his dismissal from IDOT employment violated his Fourteenth Amendment right to

due process. This claim was also rejected at summary judgment by the district court, so we review this issue *de novo* as well. *Semien*, 436 F.3d at 809. To prove his claim, Allen must demonstrate "(1) that [he] had a constitutionally protected property interest, (2) that [he] suffered a loss of that interest amounting to a deprivation and (3) that the deprivation occurred without due process of the law." *Kiddy-Brown*, 408 F.3d at 360 (citing *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989). Our ruling turns on the first factor. The property interest in employment that Allen seeks to protect does not arise out of the Constitution itself. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 545 (7th Cir. 1998). Instead, Allen's claim must be grounded in some independent "state statute, regulation, municipal ordinance, or an express or implied contract—those rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Kiddy-Brown*, 408 F.3d at 360 (internal citation omitted).

Allen argued in his pleadings, and again on appeal, that he is protected by the "personnel code and rules pertaining to State of Illinois employees," but he gives us no greater detail than this. Plaintiff's Br. at 16-17. Such an abbreviated argument would have been appropriate when Allen was responding only to the motion for judgment on the pleadings. But, when the district court converted that motion into one for summary judgment, and allowed, on Allen's motion, an extension of time in which to file additional materials, it was incumbent upon him to identify "specific facts to establish that there is a genuine triable issue." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 893 (7th Cir. 2001). He did not. Turning to the Illinois Personnel Code, however, we see that "[t]he technical and engineering staffs of the Department of Transportation" are exempted from its coverage. 20 ILCS 415/4c(12). And, as noted on Allen's IDOT job descrip-

tion, the Bureau Chief for Accounting and Auditing is classified as Technical Manager VIII, thus establishing his general exemption from those rules from which he claims relief. Given Allens' failure to identify an independent state law ground for a protected property interest in his IDOT position, we find that the district court did not err in granting summary judgment on his due process claim.

The decisions of the district court are AFFIRMED.

A true Copy:

      Teste:

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—8-22-06