In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3689

WILLIAM H. MOSS,

*Plaintiff-Appellant,*

*v.*

TIMOTHY MARTIN, ROBERT MILLETTE,
and BRIAN PIERSMA,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 3217—**Jeanne E. Scott**, *Judge.*

ARGUED NOVEMBER 9, 2006—DECIDED JANUARY 2, 2007

Before BAUER, POSNER, and FLAUM, *Circuit Judges.*

BAUER, *Circuit Judge.* William Moss brought this civil rights action against Illinois Department of Transportation ("IDOT") employees Timothy Martin, Robert Millette, and Brian Piersma, seeking monetary and injunctive relief under 42 U.S.C. §§ 1983 and 1988. Moss alleges that he was fired from his position as the IDOT's Chief of the Highway Sign Shop because of his political affiliation, in violation of the First Amendment, and without due process, in violation of the Fourteenth Amendment. Pursuant to Fed. R. Civ. P. 12(c), the defendants moved for judgment on the pleadings, which the district court granted. For the reasons stated herein, we affirm in part and reverse and remand in part.

**I.  Background**

The IDOT is the department in Illinois' state government that is responsible for developing a statewide master plan for transportation, spending state funds for roads and highways, developing and coordinating effective programs and activities to facilitate the movement of motor vehicle traffic, and protecting and conserving life and property on Illinois' streets and highways. *See* 20 ILL. COMP. STAT. 2705/2705-200, 255, 210 (2004). The IDOT is headed by the Secretary of Transportation, who oversees the IDOT's five Divisions and five Offices. 2 ILL. ADMIN. CODE 1225.210(b). The Division of Highways has ten separate bureaus, including the Bureau of Operations. The Bureau of Operations consists of the Central Bureaus of Construction, Maintenance, Materials and Physical Research, and Traffic. 2 ILL. ADMIN. CODE 1225.280(b). The Highway Sign Shop falls within the Bureau of Operations.

According to the IDOT position description, the Chief of the Highway Sign Shop "is accountable for administering the Highway Sign Shop Section of the Bureau of Operations." The Chief "formulates and implements policies, procedures, programs, and operational concepts for maintenance and rehabilitation of the department's extensive sign and raised pavement marker systems throughout the state." In particular, the Chief "directs the manufacture and distribution of all standard highway signs" and "directs the fabrication and installation of overlay panels for rehabilitation of the statewide freeway sign network." The Chief also "maintains the department's comprehensive raised pavement marker system in all highway districts and supervises a complete inventory, accounting, and budgetary system to administer a specific budget allocation for support of section activities."

The Chief supervises approximately five employees directly and twenty employees indirectly. The Chief

reports directly to the Engineer of Operations and maintains contact with the District Engineers, Traffic Engineers, and Traffic Operations personnel in all district offices and other central bureaus. The Chief is in contact with the Department of Corrections, representatives of other states, governmental agencies, research organizations, private sign fabricators, suppliers of raw materials and installation equipment, and contractors.

The position description specifies that the Chief has both technical and managerial responsibilities: the Chief "is personally responsible for providing standard signs and sign making materials, directing the fabrication and field activities required to meet the department's statewide objectives for freeway sign and raised pavement marker rehabilitation, and administering the section's budgetary and manpower resources." The Chief also "develops programs, policies and procedures to address sign and raised pavement marker maintenance needs" and "administers the Sign Shop budget and prepares annual budget and long-range program requests . . . ."

While the value of the sign system is approximately $104 million and the value of the raised pavement marker system is approximately $9 million, the annual operating expenses of the Highway Sign Shop are approximately $3.7 million. This figure includes the annual expenses associated with the fabrication of between 60,000 and 70,000 standard signs, the refurbishment of 100,000 square feet of sign panels, and the maintenance of 25,000 raised pavement markers.[1]

---

[1] The district court misinterpreted the overall values associated with the sign system and pavement marker system in the position description as an annual operating budget for the Highway Sign Shop of more than $100 million.

On March 16, 2001, Moss became a certified employee of the IDOT. His employment as Chief of the Highway Sign Shop was terminated on April 26, 2004. Moss filed suit against the IDOT defendants on September 24, 2004, alleging that he was terminated because of his political affiliation even though his political affiliation was irrelevant to his job duties. He claimed that his termination violated his First Amendment right to political affiliation and, because it was without any pre-termination hearing or proceeding, his Fourteenth Amendment right to due process.

The IDOT defendants moved for judgment on the pleadings, attaching the position description for the Chief of the Highway Sign Shop to their motion. The district court granted the defendants' motion, finding that the functions of Moss' position rendered his political affiliation a proper employment consideration. The district court also concluded that Moss had failed to state a due process claim because his complaint failed to allege any basis that would support a finding that he had a property interest in his continued employment with the IDOT. The district court granted Moss leave to file an amended due process claim.

In his amended complaint, Moss asserted that the IDOT's Personnel Policy Manual (the "Manual") gave rise to an enforceable property right in his continued employment with the IDOT because the Manual requires that terminations only be for cause. The defendants attached the Manual to their answer to the amended complaint and filed another motion for judgment on the pleadings, which the district court granted. The district court found that the disclaimer language contained in the foreword section of the Manual negated any contention that the Manual created a contract of employment. And even if the Manual created a contract, the district court concluded that the Manual contained language that

allowed the termination of an employee either with or without cause. This timely appeal followed.

## II.  Analysis

### A.  Political Affiliation as a Valid Qualification for Employment

Moss first argues that the district court erred in granting the IDOT defendants' motion for judgment on the pleadings because Moss's position as Chief of the Highway Sign Shop is not the type of position for which a politically-motivated personnel action is constitutionally permitted. Under Rule 12(c), a party can move for judgment on the pleadings after the filing of the complaint and answer. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718 (7th Cir. 2002) (*citing* Fed. R. Civ. P. 12(c)). Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion. *Id.* at 718-19 (*citing N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). We review a district court's ruling on a Rule 12(c) motion *de novo. Id.* at 719.

If the nature of a public official's job makes political loyalty a valid qualification for the effective performance of his position, that official may be terminated on the basis of his political affiliation. *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005) (*citing Elrod v. Burns*, 427 U.S. 367-68, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). To determine whether political loyalty is a valid qualification, we consider whether the employee's position entailed "the making of policy and thus the exercise of political judgment." *Allen v. Martin*, 460 F.3d

939, 944 (7th Cir. 2006) (*quoting Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005)). We also consider the degree of discretion and responsibility exercised in the position by examining the official job description for the position. *Id.* at 944-945; *Selch v. Letts*, 5 F.3d 1040, 1044-45 (7th Cir. 1993). "We only look past the official job description where the plaintiff demonstrates systematic unreliability." *Allen*, 460 F.3d at 944. To show such systematic unreliability, a plaintiff "must provide specific facts demonstrating that the description was unreliable and unauthoritative." *Id.*

On prior occasions, we have held that political affiliation is an appropriate requirement for various positions within state highway departments. *See Selch*, 5 F.3d at 1047 (political affiliation appropriate requirement for position of subdistrict superintendent of Indiana Department of Highways); *Allen*, 460 F.3d at 945 (political affiliation appropriate requirement for IDOT's bureau chief of accounting and auditing). Viewing the allegations in the light most favorable to Moss, however, we cannot conclude at this early stage in the litigation that political loyalty is a valid qualification for the Chief of the Highway Sign Shop position.

"Almost all jobs in government above the lowest level require the holder of the job to exercise at least a modicum of discretion . . . ." *Riley*, 425 F.3d at 359. The Chief of the Highway Sign Shop is no different. The Chief "exercises substantial independent judgment in making decisions concerning the development and implementation of innovative rehabilitation procedures"; "is afforded broad latitude in accomplishing his/her duties"; and "formulates and implements policies, procedures, programs, and operational concepts . . . ." The use of buzz words such as "formulates policies," "broad latitude" and "substantial independent judgment" in a position description does not transform professional or technical judgment into political

judgment, however. In his complaint, Moss alleged that there is nothing in the job duties of the Chief of the Highway Sign Shop that made or makes political considerations a requisite for that position. The position description alone does not refute this allegation conclusively, as it raises and fails to answer numerous questions as to the judgment and discretion exercised by the Chief of the Highway Sign Shop.

In particular, while the Highway Sign Shop is within the Bureau of Operations, we do not know where the Chief of the Highway Sign Shop position falls within IDOT's overall hierarchy. We do not know what policies the Chief implements: whether such policies merely ensure that signs are properly repaired or manufactured or whether they affect the IDOT's broader policies and delivery of services. We do not know Moss's salary. We do not know what contact, if any, the Chief of the Highway Sign Shop has with public officials or citizens regarding signs. *Cf. Selch*, 5 F.3d at 1047 (subdistrict superintendent received between fifteen to twenty telephone calls a day from public officials and citizens); *Allen*, 460 F.3d at 945 (major challenge of bureau chief's position is to respond to legislator questions on fund expenditures in their districts).

The position description states that the Chief makes budget requests and administers resources and manpower to operate the sign shop, but it does not mention whether the Chief has the power to enter into contracts. During oral argument, Moss represented that the Chief does not decide what signs are erected or where or when signs are installed. *Cf. Selch*, 5 F.3d at 1046 (subdistrict superintendent decided where and when road maintenance work was to be completed). He does not oversee the crews that place the signs. In the absence of additional evidence as to the functions of the Chief and the policies developed and enforced by the Chief, the extent of

any political value associated with these functions and policies is also unclear. *Cf. Selch*, 5 F.3d at 1046 (stating that "the successful implementation of policy in the area of highway maintenance would likely have substantial effect on the public's perception of the Democratic administration"); *Allen*, 460 F.3d at 945 ("[T]he effective and reliable execution of the Bureau's audit function is of great political value."). While a better-developed record may demonstrate that political affiliation is a valid requirement for the Chief of the Highway Sign Shop, we simply do not have enough evidence to reach that conclusion now.

### B. Due Process

Moss argues next that the district court erred in concluding that he had no protected property interest in his continued employment with the IDOT and by granting defendants' motion for judgment on the pleadings on his due process claim. Moss argues that the Manual specifically prohibited the abridgement of his constitutional right to choose his political party and that the language in the Manual prohibiting these actions was mandatory.

To establish a due process claim, Moss must demonstrate (1) that he had a constitutionally protected property interest, (2) that he suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of law. *Kiddy-Brown*, 408 F.3d at 360 (*citing Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989)). Because Moss was employed in Illinois, we look to Illinois law to determine whether he had a property interest in his employment with the IDOT. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 943 (7th Cir. 1996).

Under Illinois law, a person has a property interest in his job only where he has a legitimate expectation of

continued employment based on a legitimate claim of entitlement. *Krecek v. Bd. of Police Comm'rs of La Grange Park*, 646 N.E.2d 1314, 1318, 271 Ill.App.3d 418 (Ill. App. Ct. 1995) (*citing Faustrum v. Bd. of Fire and Police Comm'rs of the Village of Wauconda*, 608 N.E.2d 640, 641, 240 Ill. App. 3d 947 (Ill. App. Ct. 1993)). "To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Id.* at 1318-19. Moss's due process claim fails because the Manual, on which he bases his due process claim, does not give rise to a legitimate expectation of continued employment.

Although Illinois law presumes that an employee hired for an indefinite period may be discharged at will for any reason, it also recognizes that employment handbooks have the potential to form contracts between employers and workers. *See Duldulao v. Saint Mary of Nazareth Hospital Center*, 505 N.E.2d 314, 317-18, 115 Ill.2d 482 (Ill. 1987). A handbook that contains a clear promise of continued employment gives rise to legal entitlements. *Id.* at 318. At the same time, disclaiming language in a handbook may preclude the formation of an employment contract. *See Davis v. Times Mirror Magazines, Inc.*, 697 N.E.2d 380, 388, 297 Ill.App.3d 488 (Ill. App. Ct. 1998).

In the first paragraph of its foreword, the Manual states,

> This manual is provided to better acquaint you with the personnel policies of the Illinois Department of Transportation and *does not constitute a contract of employment in whole or in part. The Department reserves the right to add, amend or delete any benefit or policy stated herein at any time*, except as otherwise committed to by collective bargaining agree-

ments and the Department of Central Management Services' Personnel Rules.

(emphasis added). Under Illinois law, this unambiguous disclaimer is sufficient to show that the Manual does not create a legal right. *See Davis*, 697 N.E.2d at 388; *Habighurst v. Edlong* Corp., 568 N.E.2d 226, 227, 209 Ill.App.3d 426 (Ill. App. Ct. 1991); *Anders v. Mobil Chemical Co.*, 559 N.E.2d 1119, 1122, 201 Ill.App.3d 1088 (Ill. App. Ct. 1990); *see also Garcia v. Kankakee County Housing Authority*, 279 F.3d 532, 536 (7th Cir. 2002). Moreover, the disclaimer was not buried or otherwise hidden: it was the first substantive text in the Manual and it was set forth in same typeface as the rest of the Manual.

That the Manual also states that an employee "may be discharged for cause" does not change our analysis. This permissive language does not conflict with the disclaimer that the Manual "does not constitute a contract of employment in whole or in part" or create an ambiguity that can be construed in Moss's favor. *Cf. Perman v. ArcVentures, Inc.*, 554 N.E.2d 982, 987, 196 Ill.App.3d 758 (Ill. App. Ct. 1990) (summary judgment denied on due process claim where disclaimer in employee manual was "not set off from the rest of the text, printed in capital letters or titled" and manual stated that "discharges *must* be approved in advance by the director of employee relations or designees, and *are subject to employee appeal through established grievance procedures*") (emphasis added). *See also Seehawer v. Magnecraft Elec. Co.*, 714 F. Supp. 910, 912 (N.D. Ill. 1989) (denying summary judgment on plaintiff's due process claim where employee manual stated that "[e]mployees shall be discharged or disciplined *only* for just cause" while employee statement signed by plaintiff stated that "my employment and compensation can be terminated, with or without

cause and notice, at any time, at the option of the Company or myself.") (emphasis added).

Nor do the Manual's mandatory notice procedures for a discharge for cause allow Moss to state a due process claim. An employee manual or handbook's procedures do not create an enforceable property right to a job. *See Simpkins v. Sandwich Community Hosp.*, 854 F.2d 215, 218 (7th Cir. 1988); *Heck v. City of Freeport*, 985 F.2d 305, 311 (7th Cir. 1993) (stating that "[m]ere procedural rights . . . do not of themselves give rise to property interests protected under the Fourteenth Amendment").

Likewise, the provisions that state that "the rights of department employees to voluntarily engage in political activities and to make contributions must be recognized and respected" and that "nothing should be done to abridge the constitutional right of any employee to participate in the political process" do not conflict with the Manual's disclaimer or otherwise create an ambiguity that overcomes Illinois' at-will presumption. Such language sets forth the IDOT's requirements for the conduct of its employees. It does not establish a basis on which an offer of employment may be found. Moreover, interpreting such "language as establishing a just cause termination protection simply ignores the reality of employment law in Illinois and the need to read the Handbook as a coherent whole." *Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996). The language of the Manual's disclaimer is clear: no employee reading the Manual could believe reasonably that an employment contract offer had been made. We find, therefore, that the district court properly granted defendants' Rule 12(c) motion for judgment on the pleadings on Moss's due process claim.

### C.  Qualified Immunity

The IDOT defendants raise the defense of qualified immunity as an alternative basis on which to affirm judgment in their favor, arguing that the law on this issue was not clearly established at the time of Moss's termination. "Government officials performing discretionary functions are entitled to qualified immunity from suit 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Kiddy-Brown*, 408 F.3d at 352 (*quoting Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

To defeat a qualified immunity defense, a plaintiff must satisfy two conditions: (1) the complaint must adequately allege facts that, if true, would constitute a violation of a constitutional right; and (2) the case law must be "clearly established" at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful. *Delgado v. Jones*, 282 F.3d 511, 515-16 (7th Cir. 2002). As established above, Moss has satisfied the first condition by pleading a viable First Amendment claim. With regard to the second condition, the IDOT defendants argue that the law was not clearly established that political loyalty was not an appropriate job requirement for the Chief of the Highway Sign Shop. Moss is not required to produce a case that is "directly on point" to show that a right is clearly established, however. *Kiddy-Brown*, 408 F.3d at 355 (*quoting Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996)). Rather, "[t]he question is whether a reasonable state actor would have known that his actions, viewed in the light of the law at the time, were unlawful." *Id.*

We have accepted as true Moss's allegation that political affiliation is not an appropriate requirement for the Chief of the Highway Sign Shop position because there is

nothing in the Chief's job duties that made or makes political considerations a requisite for that position. At this point, we also have accepted as true, albeit implicitly, that Moss was an IDOT employee who did not engage in policymaking. As a result, Moss was an IDOT employee who could not be terminated because of his political affiliation. At the time of his termination, "it was well-established that the First Amendment prohibits a state official from dismissing, on political grounds, an employee who was not charged with policymaking duties." *Kiddy-Brown*, 408 F.3d at 357. Judgment on the pleadings in favor of the IDOT defendants on the basis of qualified immunity is therefore inappropriate. The issue of whether the IDOT defendants are entitled to qualified immunity may be revisited and resolved in the district court on a more complete record. *See id.*

### III.  Conclusion

For the foregoing reasons, we affirm the district court's entry of judgment on the pleadings in favor of defendants on Moss's due process claim but reverse the district court's entry of judgment on the pleadings in favor of defendants on Moss's First Amendment claim and remand for further proceedings.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
