Harvey LEVIN, Plaintiff,

v.

Lisa MADIGAN, individually, and as Illinois Attorney General; Office of the Illinois Attorney General; State of Illinois; Ann Spillane; Alan Rosen; Roger P. Flahaven; and Deborah Hagen, Defendants.

No. 07 C 04765

United States District Court,
N.D. Illinois, Eastern Division.

Signed May 5, 2014

Edward R. Theobald, Law Offices of Edward R. Theobald, Chicago, IL, for Plaintiff.

Deborah Joyce Allen, Illinois Department of Transportation, Schaumburg, IL, Jeffrey S. Fowler, Heather R.M. Becker, Joseph Michael Gagliardo, Laner Muchin, Ltd., Chicago, IL, for Defendants.

## ORDER

Honorable Edmond E. Chang, United States District Judge

The individual-capacity Defendants have filed a motion for partial judgment on the pleadings [R. 323], asking for enter judgment in their favor as to Plaintiff Harvey Levin's equal-protection age-discrimination claim, which he brought via 42 U.S.C. § 1983. Defendants argue that Levin's § 1983 action is precluded by the Government Employee Rights Act of 1991 (GERA), when considered in concert with the Age Discrimination in Employment Act (ADEA). For the reasons stated below, Defendants' motion is denied.

### I. Legal Standard

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party can move for judgment on the pleadings after the filing of the complaint and answer." *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir.2007). "A motion for judgment on the pleadings under Rule 12(c) ... is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. Indianapolis,* 742 F.3d 720, 727–28 (7th Cir.2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## II. Analysis

In this long-running litigation, Defendants previously have argued that Congress's enactment of the ADEA precludes government employees from invoking § 1983 to bring age-based employment discrimination claims under the Equal Protection Clause. In *Levin v. Madigan*, the Seventh Circuit rejected that argument, holding that the ADEA does not preclude the use of § 1983 to bring equal-protection age discrimination claims. 692 F.3d 607, 621–22 (7th Cir.2012). Defendants now argue that Levin should nevertheless be precluded from asserting a § 1983 claim because the ADEA *in concert with* GERA creates a comprehensive remedial regime which Congress intended to displace competing remedies under § 1983. R. 323, Defs.' Br. at 2–3.

### A. Waiver & Forfeiture

Before getting to the motion, Levin makes a threshold contention to head-off any consideration of the motion, urging this Court not to consider it because Defendants have waived their chance to present the GERA argument. There is nothing in the record that supports a finding that Defendants "waived" the GERA argument, in the sense of intentionally relinquishing their right to rely on GERA for their preclusion argument. But forfeiture is another matter: it is true, as the Court explained during the status hearing of April 11, 2014, that Defendants have had the opportunity to raise the GERA argument each and every time that Defendants argued that the ADEA precluded equal-protection age-discrimination claims brought under § 1983. Defendants argue that Levin himself is the reason why Defendants did not raise GERA earlier; according to Defendants, because Levin previously argued that he was an "employee" covered by the ADEA, Defendants saw no reason to raise GERA. But Defendants

took the position that Levin was *not* an employee covered by ADEA, but instead was an appointee appointed to his position by an elected official—that is, an appointee under GERA. *See* R. 59 at 5 n.5. Nothing prevented Defendants from arguing that, because Levin was an appointee covered by GERA, GERA acted in concert with the ADEA to preclude the § 1983 action, which is the very same argument Defendants want to present now, after a motion to dismiss and an appeal on the preclusion issue. Defendants contend that Levin was the master of his complaint, so they simply took made their arguments on that basis. But that is really a façade for the failure to make the argument earlier: consider if Levin had made *no* ADEA claim in the complaint (or the amended complaint). As Defendants conceded at the April 11, 2014 hearing, even if Levin advanced no ADEA claim in the complaint, they still would have argued that the ADEA displaced the § 1983 action. It is simply not accurate to say that, as the "master" of his complaint, Levin dictated what Defendants could or could not argue in advancing the preclusion argument.

Having said that, the forfeiture should be excused, because of the importance of both the substantive issue and the qualified-immunity defense. On substance, *Levin* created a circuit split on whether the ADEA precludes § 1983 age–discrimination actions, and after the "dig" from the Supreme Court (that is, the certiorari's dismissal as improvidently granted), the circuit split remains in place. One (though just one) of the underpinnings of *Levin*'s rationale was that state employees like Levin are left without a federal damages remedy, 692 F.3d at 621, when in fact GERA does offer a federal proceeding (albeit a very different granted to employees under the ADEA and granted to plaintiffs in § 1983 actions) for state appointees who are the victims of age discrimination. Yes,

Defendants forfeited the GERA argument, but the issue's importance justifies excusing the forfeiture.

■■■ In addition to the issue's substantive importance, another reason to excuse forfeiture (when considered in combination with the issue's importance) is that Defendants are asserting the qualified immunity defense. Qualified immunity is designed to allow government officials to avoid the burdens of litigation when the law is not clearly established, and relieving officials of those burdens in turn confers a benefit on society as a whole. The importance of qualified immunity even justifies an interlocutory appeal, a rarity in our system that disfavors piecemeal appeals, and even justifies more than one interlocutory appeal if qualified immunity is raised again at the summary-judgment stage. *See Behrens v. Pelletier,* 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).[1] So, in light of the importance of the substantive issue and the qualified-immunity defense, the Court will excuse Defendants' forfeiture and permit Defendants to make the GERA argument now, at this late stage of the litigation. It is time to turn to the motion for judgment on the pleadings.

### B. *Levin* Is Controlling Authority

■ First and foremost, this Court is bound by the holding in *Levin,* which means that Defendants' argument must be rejected here, and it is up to the Seventh Circuit to decide whether Defendants' addition of GERA to their preclusion argument makes any difference. This is the classic situation where a litigant is, at bottom, making what the litigant believes is an argument that undermines the holding of an appellate-court decision. Defendants made this approach explicit in their reply brief before the Supreme Court, where Defendants stated outright that they "do not contend that GERA has any independent ability to displace § 1983 remedies." R. 311–3, Defs.' SCOTUS Reply Br. at 4. Purporting to raise GERA merely "in response to the Seventh Circuit's concern that the ADEA exempts claims by elected officials and certain members of their staff as well as appointees," Defendants argue that "GERA is part and parcel of the ADEA's 'remedial regime.'" *Id.* at 4–5 (internal quotation marks and citations omitted). And the Seventh Circuit had already decided that the ADEA does not preclude constitutional claims under § 1983. *See Levin,* 692 F.3d at 621–22. Defendants believe that if the Seventh Circuit were to consider the existence of GERA and its application to Levin, then the Seventh Circuit would conclude that the ADEA, acting in concert with GERA, precludes § 1983 actions for age discrimination. In a hierarchical judicial system, it is for the court of appeals, not a lower trial court, to overrule a prior holding of the appellate court. *See Rodriguez de Quijas v. Shearson/Amer. Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (applying same principle to Supreme Court decisions). The motion for judgment on the pleadings must be denied by this Court, because *Levin* controls both the question of whether the ADEA precludes § 1983 actions and whether Defendants are entitled to qualified immunity.

### C. Analysis of GERA Under the *Levin* Standard

■ Even if the Court could consider Defendants' GERA arguments, the Court

---

1. Although this Court previously expressed its doubt that the qualified immunity defense applies at all to procedural uncertainty, that is, uncertainty over whether a § 1983 cause of action for a clearly established substantive right (like the right against irrational age discrimination) is precluded by another statutory scheme, in *Levin,* the Seventh Circuit did address procedural uncertainty as a qualified-immunity issue.

would conclude that GERA does not add enough to the ADEA regime to create preclusion of § 1983 actions for age discrimination under the Equal Protection Clause. Defendants open their brief with a section entitled "A Comprehensive Remedial Regime Will Displace A § 1983 Remedy," and devote much of their argument to the same premise. Defs.' Br. at 2–6. But under the Seventh Circuit's approach, their argument is misguided. The Seventh Circuit has already acknowledged that "the ADEA enacts a comprehensive statutory scheme for enforcement of its own *statutory* rights. . . ." 692 F.3d at 617 (emphasis added). The Seventh Circuit went on to hold, however, that "[f]or the preclusion of *constitutional* claims, [as opposed to statutory claims,] we believe more is required than a comprehensive statutory scheme." *Id.* at 619 (emphasis in original). Thus, however much GERA adds to the comprehensiveness of the ADEA, preclusion of § 1983 claims requires "some additional indication of congressional intent." *Id.*

In considering whether the ADEA precluded § 1983 actions, the Seventh Circuit considered two factors, as dictated by Supreme Court precedent: (1) the ADEA's legislative history and statutory language, and (2) a comparison of the rights and protections afforded plaintiffs by the ADEA and § 1983. *Id.* at 617. On the first factor, the Seventh Circuit concluded that, unlike the statutes at issue in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), and *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), neither the ADEA's text nor its legislative history indicates that Congress intended to foreclose relief under § 1983. *Id.* at 618–20. On its face, "[n]othing in the text of the ADEA expressly precludes a § 1983 claim or addresses constitutional rights." *Id.* at 617. And, noting the ADEA's legislative histo-

ry's silence on the issue, the Seventh Circuit could not conclude whether Congress had "even considered alternative constitutional remedies in enacting the ADEA." *Id.* at 618.

The Seventh Circuit held that the second factor, too, weighed against preclusion of § 1983 actions. *Id.* at 621. In particular, *Levin* identified three significant ways in which the rights and protections afforded by the ADEA diverge from those under § 1983. First, § 1983 broadens the scope of defendants who may be liable for age discrimination under the ADEA by permitting suits against individuals. *Id.* Second, § 1983 extends protection to individuals excluded as plaintiffs under the ADEA (such as certain law enforcement officers and firefighters, among others). *Id.* And finally, practically speaking § 1983 offers a monetary damages remedy for state employees (because they can sue *individual* supervisors who engage in age discrimination), whereas under the ADEA the States themselves cannot be sued due to sovereign immunity, per *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 91–92, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). With nothing in the ADEA's text or history to support § 1983 preclusion, and salient differences in the rights and protections afforded by the two claims, the Seventh Circuit concluded that Congress did not intend to do away with a § 1983 constitutional alternative. *Id.* at 622.

Whether "part and parcel of" or "in concert with" the ADEA, GERA adds little to the Seventh Circuit's analysis. Like the ADEA, GERA is silent on its face as to the displacement of constitutional claims. *See* 42 U.S.C. § 2000e–16 *et seq.* Indeed, Congress noted that the Civil Rights Act of 1964, of which GERA is a part, was intended "to provide *additional* protections against unlawful discrimination in employment"—not to narrow existing

ones. 105 Stat. 1071 § 2(3) (emphasis added). More importantly, GERA not only addresses age discrimination by providing appointees with ADEA remedies, GERA provides "procedures to protect the rights of certain government employees, with respect to their public employment, to be free of discrimination on the basis of race, color, religion, sex, national origin, age, or disability." 42 U.S.C. § 2000e-16a(b). Thus, GERA actually acts in concert with not only the ADEA, but also with Title VII (and the Americans with Disabilities Act). There is no hint in the text or structure of GERA that GERA treats preclusion of age-discrimination claims under § 1983 any differently than race or sex discrimination claims under § 1983. And it is well-settled that Title VII does *not* preclude an equal-protection claim for race or sex discrimination via a § 1983 action. *See, e.g., Trigg v. Fort Wayne Cmty. Sch.*, 766 F.2d 299, 302 (7th Cir.1985) ("A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII. This holding is consistent with the great weight of authority."). So, in essence, Defendants' argument that GERA precludes age discrimination actions under § 1983 would necessarily mean that GERA also precludes race and sex discrimination claims under § 1983 actions (at least actions brought by appointees), and there is nothing in GERA to suggest that is correct.

GERA similarly fails to bridge the gap between the ADEA and § 1983's divergent rights and protections. Of the three primary differences recognized by the Seventh Circuit (different plaintiffs, defendants, and remedies), GERA narrows only one by extending the ADEA's protections to state-government employee-plaintiffs like Levin. Still other plaintiffs, like individuals under the age of forty and certain law enforcement officers and firefighters, are left without recourse absent the Equal Protection Clause, as enforced via § 1983.[2] On the issue of potential defendants, Defendants have cited no way in which GERA modifies the ADEA as to what set of defendants can be sued under for age discrimination; like the ADEA, GERA does not authorize age-discrimination lawsuits against individuals, whereas § 1983 equal-protection claims can target individual decisionmakers. The procedures and remedies of GERA do differ starkly from § 1983 (and, for that matter, from the ADEA). Under GERA, the state appointee must file a complaint with the EEOC, and then it is the EEOC that must make an administrative finding under the Administrative Procedure Act, 5 U.S.C. § 554 *et seq.* If the state appointee (or the State) is dissatisfied with the EEOC finding, then the appeal goes to the Court of Appeals, not to a district court. 42 U.S.C. § 2000e-16c(c). So there is no jury trial under GERA. It is true that these significant procedural differences might suggest that Congress wanted to restrict state-appointee procedural rights and remedies to the exclusion of others. But, remember, there is nothing in GERA's text or structure that addresses *constitutional* claims, so the divergence in procedure actually *undermines* the argument that Congress was supplanting § 1983.

---

2. Defendants also ask the Court to bifurcate its interpretation of Congress's intent as to certain plaintiffs. *See* R. 326, Defs.' Reply Br. at 5–6 (suggesting that victims of "reverse" age discrimination under the age of forty "are simply not part of the displacement argument in this case."). Once again, Defendants do not cite any support for this sort of approach, where § 1983 is available for some age-discrimination plaintiffs, but not for others.

In short, it is true that GERA fortifies an already "comprehensive statutory scheme" and prescribes a set of administrative procedures around which a § 1983 action would provide a judicial shortcut. But these factors alone do not demonstrate Congress's intent to impliedly repeal § 1983 actions for constitutional violations. As noted in *Levin,* the "Supreme Court has emphasized on several occasions that 'repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest.'" 692 F.3d 607, 618 (*quoting Hui v. Castaneda,* 559 U.S. 799, 810, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010)). No repeal can be discerned from the text, structure, legislative, or design of GERA and the ADEA.

### IV. Conclusion

For the reasons stated above, Defendants' motion for judgment on the pleadings [R. 323] is denied.