In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1792

ROBIN ALLMAN, *et al.*,

*Plaintiffs-Appellees*,

*v.*

KEVIN SMITH and CITY OF ANDERSON, INDIANA,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-0568-TWP-DML — **Tanya Walton Pratt**, *Judge*.

ARGUED MAY 22, 2015 — DECIDED JUNE 24, 2015

Before EASTERBROOK, WILLIAMS, and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After being elected Mayor of Anderson, Indiana, a city of about 56,000 people, Kevin Smith replaced many members of the City's staff with his political supporters or persons he deemed trustworthy. Eleven of the fired workers filed this suit under 42 U.S.C. §1983, contending that the discharges violated the First Amendment as understood in *Elrod v. Burns*, 427 U.S. 347

(1976). The district judge concluded that all plaintiffs have enough evidence to require a trial but that Mayor Smith is entitled to qualified immunity with respect to nine of the eleven plaintiffs' claims. 6 F. Supp. 3d 889 (S.D. Ind. 2014).

The Mayor has appealed from the adverse portion of this interlocutory decision, relying on *Mitchell v. Forsyth*, 472 U.S. 511 (1985), and its successors. Surprisingly, the City also has appealed, even though as a municipal body it is not entitled to any form of immunity and is outside *Mitchell*'s ambit. The City invokes the doctrine of "pendent appellate jurisdiction," which barely survived its scathing treatment in *Swint v. Chambers County Commission*, 514 U.S. 35 (1995), and today allows a court of appeals to review an interlocutory order only when it is "inextricably intertwined" with an appealable decision. *Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997).

The City maintains that its attempt to have the plaintiffs' claims dismissed on the merits is "inextricably intertwined" with the Mayor's attempt to be free of the risk of damages liability, but the contentions are not "intertwined" at all, let alone "inextricably" so. *Mitchell* described an immunity appeal as "conceptually distinct from the merits" (472 U.S. at 527), which the Court saw as an essential condition of interlocutory review. It is not only possible but also normal to resolve a defendant's request for qualified immunity without deciding the merits of a plaintiff's claim. See *Pearson v. Callahan*, 555 U.S. 223, 231–43 (2009).

The principal question in an immunity appeal is whether uncertainty in legal doctrine makes it inappropriate to award damages against a public official—that is, whether the law was "clearly established" before the official acted. See, e.g., *San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774–78

(2015); *Wilson v. Layne*, 526 U.S. 603, 618 (1999). A general principle does not support personal liability; instead the law's application to a type of situation must be developed enough to "place[] the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), quoted in *Sheehan*, 135 S. Ct. at 1774. The question on the merits, by contrast, concerns who is in the right, not how much legal uncertainty must be cleared away to find the answer. The district judge held that factual investigation, perhaps including a trial, is necessary to determine whether the plaintiffs' rights under the First Amendment have been violated. We therefore limit the appeal to Mayor Smith's arguments about the only two plaintiffs with respect to whom the district judge denied his request for immunity: Robin Allman and Margaret Baugher.

When Smith was elected, Allman was Office Manager for the Utility Department. That position includes planning, organization, and other tasks that the parties agree are vital to an elected official's ability to carry out his platform, and so entitle elected officials to use political criteria to decide who holds the job. See generally *Branti v. Finkel*, 445 U.S. 507, 518 (1980) (describing the sort of positions for which "party affiliation is an appropriate requirement for the effective performance of the public office"). Smith told Allman that he would not retain her as the Office Manager; she then exercised her seniority (she had worked for the City for 20 years) to move to an open position as a cashier in the Utility Department. That transfer took effect on December 27, 2011. When Mayor Smith took office on January 3, 2012, he "promoted" her back to Office Manager and immediately sacked her.

The parties agree that the position of cashier is not politi-cally sensitive and that *Elrod* forbids the use of politics when filling it. Mayor Smith does not contend that he would be entitled to immunity had he cashiered a cashier. But he con-tends that Allman was not *properly* a cashier because politi-cal considerations influenced both her hiring as Office Man-ager and her transfer to the cashier's position; according to Mayor Smith, this meant that Allman was still the Office Manager when he took office and could be removed con-sistent with *Elrod* and *Branti*. Allman maintains, to the con-trary, that the cashier's position had been properly posted as open in November 2011, that her transfer satisfied all of the City's rules, and that the reason she sought the transfer is irrelevant.

This description of the controversy shows that it has nothing to do with uncertainty in federal law, and thus noth-ing to do with qualified immunity. The only disputed ques-tion is one of state or local law (which may be influenced by the resolution of factual disputes about how and why the transfer occurred): whether Allman properly occupied a cashier's position. It follows that Mayor Smith is not entitled to interlocutory review with respect to Allman's situation. *Johnson v. Jones*, 515 U.S. 304 (1995), holds that qualified-immunity appeals under *Mitchell* are limited to determining whether the legal issue is subject to uncertainty and do not support review of antecedent questions. The antecedent question in *Johnson* was whether the plaintiff or the defend-ant had correctly described the facts of the controversy; the Court held that resolution of factual questions had to await appeal from a final judgment, even if one possible resolution would have brought a legal issue to the fore. In Allman's situation the antecedent question is whether her appoint-

ment to the cashier's position was valid. No matter how that comes out, the court will not need to resolve a disputed question of federal law. *Johnson* makes it easy to see that Mayor Smith is not entitled to interlocutory review of the question whether Allman was entitled to be a cashier. That's the whole case, not (as *Mitchell* requires) an issue conceptually distinct from the merits.

Margaret Baugher, the other ex-employee involved in this appeal, "worked as Customer Service Supervisor in the City's Utility Department. She reported to the Assistant Manager for the Utility Department. As Customer Service Supervisor, Ms. Baugher was responsible for directing personnel, assisting customers, and making billing adjustments, as well as receiving and responding to customer inquiries and complaints, assisting customers in initiating and terminating services, and coordinating new sewer and storm water accounts with the appropriate City department." 6 F. Supp. 3d at 894. This customer-service job was not the top of the Utility Department, or even a deputy, but the third level on the organization chart. The district judge wrote: "Ms. Baugher mainly interacted with co-workers and members of the general public, not high level city officials. Her main duties consisted of complying with department policies and rules, not developing such policies, and the information she was charged with keeping confidential was not politically sensitive information. Unless there is additional evidence provided to the contrary at trial, it appears that Ms. Baugher's position falls outside of the exemption for First Amendment protection, thus summary judgment on her claim is not warranted." *Id.* at 902.

This court has urged district judges to use job descriptions, whenever possible, to apply *Elrod* and *Branti*, see *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005), and Mayor Smith observes that the job description for Baugher's position mentions the possibility that the Customer Service Supervisor might have to run the Department if all higher positions should be unfilled or unable to act. The record does not show that this has ever happened, however, and if a remote possibility that a subordinate might need to act as a caretaker were enough to make politics a legitimate qualification for the post, then *Elrod* would be overthrown—for if a disaster of sufficient proportions struck, even a garbage collector might find himself the highest remaining worker in a city's department of sanitation.

*Branti* holds that an assistant public defender cannot be fired on political grounds, although the public defender, charged with setting policy for the office, might be. By Mayor Smith's lights, *Branti* should have come out the other way, because it was *possible* that an assistant might have to perform the chief's duties if that office became vacant or the chief was unable to act. But that's not how the Court approached the case. Nor is it how we approached the question whether the #2 position in a large bureaucracy (Chicago's Water Department) could be removed on political grounds. We asked in *Tomczak v. Chicago*, 765 F.2d 633 (7th Cir. 1985), what the First Deputy Commissioner usually did, not what duties were conceivable under unlikely conditions. The First Deputy Commissioner of Chicago's Water Department regularly made policy (or exercised politically sensitive discretion), and it followed that he could be replaced on political grounds. That can't be said about Baugher's job (the third tier in a small organization)—and Mayor Smith does not say

it. He does not contend that she regularly, or indeed ever, made policy or exercised politically sensitive discretion, such as which street's potholes get filled or what ward's snow gets plowed.

Now if the job description said that she did do those things, then Mayor Smith would be entitled to immunity even if it turned out that the description was inaccurate. A newly elected mayor needs to rely on published criteria to know which positions can be filled on political grounds. For the federal government, *United States Government Policy and Supporting Positions* (the "Plum Book") identifies the 7,000 or so posts eligible for presidential selection or discretionary replacement by presidential appointees. Many states and local governments have similar rosters, and people whose jobs are in such a catalog are not well situated to complain when replaced. They certainly cannot obtain damages from an elected official who relies on a published list. But the City of Anderson does not have a local version of the Plum Book. A mayor who equates a worker's possible duties (e.g., acting for the top official if all higher positions on the organization chart are vacant) with the worker's normal duties (e.g., processing complaints about overbilling or failure to credit payments) cannot claim immunity, because *Branti* and decisions such as *Tomczak* and *Riley* establish that it is the position's normal duties that matter.

As a fallback, Mayor Smith contends that anyone responsible for dealing with citizens' complaints may be hired or fired on political grounds, for if such a person insults people, or is lazy, or refuses to act on legitimate grievances, that reflects poorly on the administration, and a loss of public confidence undermines its ability to carry out its political pro-

gram (or be re-elected). For this, Mayor Smith relies princi-
pally on *Selch v. Letts*, 5 F.3d 1040 (7th Cir. 1993), which
holds that political affiliation is an appropriate requirement
for the position of subdistrict superintendent at the Indiana
Department of Highways.

Responding to complaints was one aspect of a subdistrict
superintendent's job, but it mattered to the decision what
those complaints concerned—and how the subdistrict super-
intendents could deal with them. Each subdistrict could set
an independent agenda about road repairs and maintenance,
including snow removal. Subdistrict superintendents had
"almost unbridled authority to determine where and when
… work was to be done" (*id*. at 1045). The ability to deliver
public services is vital to the success of any mayor or gover-
nor, and *Selch* reported that the quality of public services
had been an issue in the gubernatorial election that led to
Selch's replacement. It is therefore understandable that a
person with "unbridled authority" to determine where and
when road-related services are provided must be someone
the Governor can trust. That subdistrict superintendents
sometimes acted in response to complaints was a sidelight;
what mattered was their discretion over matters of high po-
litical salience.

Mayor Smith does not contend that the Customer Service
Supervisor of the Utility Department has unbridled, or in-
deed any significant, discretion over matters of high political
value. Customer-service positions are ubiquitous in the
economy; people who call AT&T to complain about a tele-
phone bill hope to be well treated, but they do not imagine
that they are speaking to people with policy-making discre-
tion. True, if a customer-service supervisor fouls up, that

will redound to the employer's detriment. But that's true of almost every employee. If a road maintenance worker falls asleep on the job, or a postal letter carrier tramples a flower bed, citizens may be furious and the government will fall in public esteem. Yet *Elrod* holds that politics may not be a ground of replacing road maintenance workers and similar positions that do not entail political discretion. That's equally true of customer-service supervisors.

The district judge recognized that a trial might show that Baugher has more discretion than her job description implies, and if so it may turn out in *Branti*'s words that "party affiliation is an appropriate requirement for the effective performance of the public office". All we have to go on now, however, is the job description. *Johnson v. Jones* prevents any deeper inquiry. *Selch* and other decisions we have mentioned clearly establish that a person whose main duties are managing a clerical staff that handles customer complaints—who has limited operational discretion but no significant policy-making discretion—cannot be fired on political grounds.

The appeal is dismissed to the extent it concerns the City of Anderson or Robin Allman's claim. The district court's decision that Mayor Smith is not entitled to qualified immunity on Margaret Baugher's claim is affirmed.