**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1832**

———————

ESTATE OF JOSEPH LOPEZ, by Administrator Joe Lopez,

Plaintiff – Appellee,

v.

MATTHEW HAMILTON, Greensboro Police Department Officer,

Defendant – Appellant,

and

CITY OF GREENSBORO,

Defendant.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Loretta C. Biggs, District Judge. (1:22-cv-00421-LCB-JLW)

———————

Submitted: April 10, 2024                       Decided: May 29, 2024

———————

Before WILKINSON and AGEE, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

**ON BRIEF:** Amiel J. Rossabi, Gavin J. Reardon, ROSSABI LAW PLLC, Greensboro, North Carolina; Walter K. Burton, WALTER K. BURTON, PLLC, Oak Ridge, North

Carolina, for Appellant.  Graham Holt, LAW OFFICE OF GRAHAM HOLT, Greensboro, North Carolina; G. Flint Taylor, Ben H. Elson, Nora P. Snyder, PEOPLE'S LAW OFFICE, Chicago, Illinois, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

While responding to a report that Joseph Lopez was attempting to enter a residence, Officer Mathew Hamilton shot and killed Lopez, who was unarmed and did not pose any threat to safety. As a result, Lopez' Estate (the "Estate") brought claims against Officer Hamilton under 42 U.S.C. § 1983 and North Carolina law. Contending that he was immune from liability, Officer Hamilton filed a motion for judgment on the pleadings. The district court denied that motion. Officer Hamilton appeals. We affirm.

I.

A.

Accepting as true all well-pleaded allegations and viewing them in the light most favorable to the Estate, as we must at this stage, *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014), the facts are as follows. On November 19, 2021, the Greensboro Police Department received a report that Lopez was attempting to enter a residence. Multiple officers, including Officer Hamilton, responded and found Lopez inside a small room located in the back of a garage at the relevant residence.

Officer Hamilton, who was a police dog handler and had his dog with him, approached and opened the door of the room. Without entering, Officer Hamilton said, "Greensboro police, if you're in there, make yourself known." J.A. 15. Lopez responded, "Yes, I'm here." J.A. 15. Officer Hamilton then instructed Hamilton to "[c]ome on out with [his] hands up or [Officer Hamilton would] send [his] dog in there and he[ would] bite

3

[Lopez]." J.A. 15. Lopez replied that he would come out of the room when it was "safe" to do so. J.A. 15.

"Shortly thereafter," Officer Hamilton released his dog into the room and the dog attacked Lopez, who "yelled out in distress." J.A. 15. "Seconds later," Officer Hamilton "walked through the door, pulled his handgun from his holster," and "without saying anything" fatally shot Lopez "square in the face." J.A. 15.

At the time he was shot, Lopez was sitting in a chair approximately fifteen feet away from Officer Hamilton and was unarmed, made no verbal or physical threats, and "presented no immediate danger" to anyone. J.A. 16. However, Officer Hamilton "attempted to cover-up" his actions "by falsely claiming to his fellow officers that '[he] saw something in [Lopez'] hand.'" J.A. 16. He and the other officers then moved Lopez' body and gave false stories to investigators.[1]

B.

The Estate brought this action against Officer Hamilton, claiming, under § 1983, that Officer Hamilton violated Lopez' Fourth and Fourteenth Amendment rights by unreasonably using excessive force against him. The Estate also brought a state law claim for wrongful death.[2] Officer Hamilton filed an answer, bringing the affirmative defenses

---

[1] Officer Hamilton disputes that the complaint alleges that Lopez was unarmed and not dangerous *at the time he was shot*. It's true that the Estate's allegations do not explicitly state "at the time Lopez was shot, he was unarmed and not dangerous." But we are satisfied that the context makes it clear that that is exactly what the Estate is alleging.

[2] The Estate additionally brought a § 1983 claim for *Monell* liability against the City of Greensboro. That claim is not at issue in this interlocutory appeal.

4

of federal qualified immunity for the § 1983 claim and North Carolina's public official immunity for the wrongful death claim. Officer Hamilton then moved for judgment on the pleadings, arguing that he was entitled to immunity on all claims.

The district court disagreed and denied the motion. *Est. of Lopez v. Hamilton*, 1:22CV421, 2023 WL 4931654, at *1 (M.D.N.C. Aug. 2, 2023). Applying the two-pronged qualified immunity inquiry,[3] it first concluded that Officer Hamilton violated Lopez' right to be free from excessive force. The district court then accepted the Estate's position that a case directly on point was unnecessary to show that the right was clearly established because "it should be obvious to any reasonable officer that shooting an unarmed and unthreatening person who is not trying to flee immediately after releasing a police dog on him is a use of excessive force under the general prohibition against shooting unarmed, non-dangerous suspects." *Id.* at *6. (emphasis omitted). Alternatively, even if it were not obvious, the district court concluded that this Court's decision in *Kopf v. Wing*, 942 F.2d 265 (4th Cir. 1991), was sufficiently analogous to put Officer Hamilton on notice that his actions were unconstitutional.

Because the standard for North Carolina's public official immunity is largely the same as the qualified immunity standard, the court also concluded that public official immunity is not available to Officer Hamilton at this stage.

---

[3] Those prongs require the court to consider (1) whether a statutory or constitutional right was violated, and (2) whether the right was clearly established at the time of the violation. *Hensley ex rel N.C. v. Price*, 876 F.3d 573, 580 (4th Cir. 2017).

5

Officer Hamilton timely filed this interlocutory appeal, arguing that the district court erroneously denied him qualified and public official immunity because the Estate failed to allege sufficient facts demonstrating a constitutional violation that was clearly established at the time of Lopez' death. The Court has jurisdiction over the appeal under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985).

## II.

We review the district court's denial of qualified immunity and public official immunity de novo. *Hensley ex rel N.C. v. Price*, 876 F.3d 573, 579 (4th Cir. 2017). A court may dismiss a claim on the pleadings "only if it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006) (cleaned up); *see also Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (noting that Rule 12(c) motions for judgment on the pleadings apply the same standard as Rule 12(b)(6) motions to dismiss). As a result, an immunity defense asserted at this "early stage in the proceedings" "faces a formidable hurdle and is usually not successful." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (cleaned up).

## III.

We begin with Officer Hamilton's qualified immunity arguments. The qualified immunity analysis consists of two prongs: (1) whether a statutory or constitutional right

6

was violated, and (2) whether the right was clearly established at the time of the violation. *Hensley*, 876 F.3d at 580. We apply a "split burden of proof for the qualified-immunity defense," giving the plaintiff the burden of proof on the first prong and the officer the burden of proof on the second prong. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

A.

Beginning with the first prong, Officer Hamilton argues that there are insufficient factual allegations to support the Estate's contention that he violated Lopez' right to be free from the unreasonable use of deadly force. We disagree.

"Whether an officer has used excessive force depends on the facts and circumstances of each particular case[.]" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (cleaned up). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). And "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

To determine whether the use of force was reasonable, the Court considers the factors the Supreme Court laid out in *Graham*: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In cases where deadly force was used, "the second *Graham* factor is particularly

important." *Franklin v. City of Charlotte*, 64 F.4th 519, 531 (4th Cir. 2023). "[T]he question comes down to whether the circumstances presented an immediate threat that justified the officer's resort to lethal force as objectively reasonable, without regard to the officer's underlying intent or motivation." *Id.* (cleaned up).

Applying the *Graham* factors, we conclude that the Estate sufficiently alleged that Officer Hamilton's use of deadly force was unreasonable. First, regarding the severity of the crime, the complaint states that Lopez "had been trying to enter" a particular residence. J.A. 15. When making inferences in the Estate's favor, Lopez' actions suggest that he was, at most, trespassing—a minor crime that does not support the use of deadly force.

Second and most importantly, Lopez did not pose an immediate threat to the safety of the officers or others. At the time he was shot, Lopez was fifteen feet away from Officer Hamilton, had just been attacked by a dog, was unarmed, and did not make any threats. Deadly force in these circumstances is simply not justified.

Rather than engaging with the facts as alleged, Officer Hamilton conjures up multiple hypothetical scenarios about potential weapons that *could have been* found in the garage that Lopez *could* have reached for. He then faults the Estate for failing to allege facts that eliminate each of these possibilities. Officer Hamilton, however, misunderstands the inquiry at this stage. The Estate is required only to state a claim for relief that is plausible on its face. *See Ridpath*, 447 F.3d at 317 (stating that a court will dismiss a claim at this stage "only if it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief" (cleaned up)). It does not have to allege facts defeating every possible hypothetical situation. And, in any event, the Estate

8

alleged that Lopez was unarmed. So, even if he had access to a tool that could have been used as a weapon, because he did not attempt to wield it against the officers, that access would have been insufficient to justify deadly force. *See Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013) ("[T]he mere possession of a firearm by a suspect is not enough to permit the use of deadly force.").[4]

Officer Hamilton also contends that there are simply no allegations in the complaint that show that he *knew* Lopez was unarmed. He suggests that the garage may have been dark and he therefore may not have been able to see Lopez well. But this argument turns the excessive force inquiry on its head. Officers are not entitled to use deadly force simply because they are unsure whether the suspect poses a threat; instead, officers must affirmatively demonstrate that they had probable cause to believe the suspect was dangerous before they resorted to such tactics. *See Franklin*, 64 F.4th at 533 ("But as [the officer] admits, she could not see [the plaintiff's] hands from her vantagepoint. It was unreasonable under these circumstances to assume that [the plaintiff] *must be* holding a weapon in his hands without leaving any daylight for the possibility that he was not."). The second—and most important—*Graham* factor therefore supports a finding that Officer Hamilton's use of deadly force was unreasonable.

---

[4] Officer Hamilton's "disagreement with the assumed context here illustrates the mismatch between the 12(b)(6) plausibility standard and the often fact-intensive nature of qualified-immunity inquiries. But that incongruity does not justify heightening the pleading standard." *Hanson v. LeVan*, 967 F.3d 584, 597 (7th Cir. 2020) (citations omitted).

9

Third, Lopez was not actively resisting or attempting to evade arrest when he was killed. While Lopez did not comply with Officer Hamilton's request to leave the room with his hands up, he did state that he would come out when it was "safe" to do so, indicating a willingness to comply. And even if Lopez was resisting arrest, we have made clear that "non-cooperation with law enforcement has never given officers carte blanche to use deadly force against a suspect." *Id.* at 535 (cleaned up).

At bottom, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The district court therefore correctly concluded that the Estate sufficiently pled a constitutional violation.

## B.

We next consider the clearly established prong of the qualified immunity analysis. Officer Hamilton contends that there is no case clearly establishing that his use of deadly force was unreasonable in these circumstances. Again, we disagree.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). To show that the right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12 (citation omitted). Clearly established law should not be defined "at a high level of generality." *Id.* (citation omitted). Courts should instead consider "whether the violative nature of *particular* conduct is clearly established" given "the specific context of the case." *Id.* (citations omitted).

10

Still, "the very action in question need not have previously been held unlawful because general statements of the law are not inherently incapable of giving fair and clear warning, and a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Ridpath*, 447 F.3d at 313 (cleaned up). For example, in *Garner*, 471 U.S. at 11, the Supreme Court concluded that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." Although *Garner*'s standard is "cast at a high level of generality," in an "obvious case" it can "clearly establish the answer, even without a body of relevant case law." *Rivas-Villegas*, 595 U.S. at 6 (cleaned up).

Below, the Estate claimed—and the district court agreed—that this is an obvious case under *Garner* because Lopez posed no immediate threat when Officer Hamilton fatally shot him in the face. Officer Hamilton failed to respond to this argument. *See Est. of Lopez*, 2023 WL 4931654, at *6 ("Officer Hamilton has not offered any arguments whatsoever that this was not an obvious case."). Officer Hamilton therefore forfeited any argument to the contrary. *See United States v. Savage*, 737 F.3d 304, 310 (4th Cir. 2013) ("Issues raised for the first time on appeal are generally not considered absent exceptional circumstances." (cleaned up)).

Accordingly, we affirm the district court's decision concluding that this presented an obvious case and denying Officer Hamilton qualified immunity at this stage.

IV.

We finally turn to the public official immunity inquiry. "Public officials in North Carolina usually are immune from suit for actions taken in their official capacities." *Hensley*, 876 F.3d at 587. Thus, officers are generally "entitled to public official immunity so long as they did not act (1) outside the scope of their official authority, (2) with malice, or (3) in a corrupt manner." *Id.* (cleaned up). "[A]n officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty," and public official immunity is therefore "unavailable to officers who violate clearly established rights." *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003) (cleaned up).

Because we conclude that, under the facts alleged, Officer Hamilton violated Lopez' clearly established rights, we also conclude that he is not entitled to public official immunity. Thus, we affirm the district court's decision to deny Officer Hamilton public official immunity at this stage.

V.

For the foregoing reasons, the district court's judgment is

*AFFIRMED.*

12